# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **A.L.**

**No. 18-1099** (Fayette County 16-JA-04)

**FILED**

**January 17, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father G.W., by counsel Marc A. Moore, appeals the Circuit Court of Fayette County's November 14, 2018, order terminating his parental rights to A.L.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem, Allison R. Taylor, filed a response on behalf of the child in support of the circuit court's order and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in terminating his parental rights based upon certain procedural issues.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

The underlying proceedings giving rise to this appeal have previously been before this Court for review. As more fully set forth below, the Court vacated a prior order terminating petitioner's parental rights and remanded the matter for the appointment of counsel and the holding of a new dispositional hearing. *In re A.L.*, No. 17-0573, 2018 WL 1251740, at *1 (W. Va. March 12, 2018)(memorandum decision). This remand was necessary due to the fact that the circuit court previously permitted petitioner's appointed counsel to withdraw from his representation at the prior dispositional hearing, thereby leaving petitioner without representation at that stage of the proceedings. *Id.* at *3. As noted in this Court's prior ruling, the DHHR's allegations against

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

petitioner indicated that "the circumstances of his care posed an imminent danger to the child's physical well-being," and, as alleged in subsequent amended petitions, petitioner "missed a visit with the child on March 18, 2016, and that the child reported to the guardian that he had not seen petitioner in years 'until the last year or so.'" *Id*. at *1. Further, it was also alleged that "the child exhibited signs of severe emotional distress." *Id*. Ultimately, petitioner "stipulated to neglecting the child and that the child's physical and/or mental health was threatened by his inability to supply the child with a stable and healthy environment." *Id*. Prior to this Court's remand, the guardian moved to terminate petitioner's post-adjudicatory improvement period and his parental rights upon allegations that petitioner failed to comply with the terms and conditions of his post-adjudicatory improvement period. *Id*. Petitioner challenged the circuit court's finding at adjudication that he was an abusing parent in his first appeal. *Id*. at *3. However, because petitioner stipulated to adjudication below, we declined to review his argument on appeal and found "that the circuit court did not err in adjudicating petitioner as an abusing parent." *Id*. Given that petitioner's adjudication was affirmed, this Court was explicit that the matter was remanded "for the appointment of counsel for petitioner" and directed the circuit court to "hold a dispositional hearing as expeditiously as possible." *Id*.

Subsequent to this Court's remand, the circuit court entered an order in March of 2018 appointing counsel for petitioner "at a to-be-scheduled-dispositional hearing." However, the circuit court entered orders in June of 2018 and July of 2018 that granted petitioner's motions to "adjourn the adjudicatory hearing" for various procedural reasons. It is unclear from the record why an adjudicatory hearing was held or whether the circuit court ever entered an order upon the conclusion of an adjudicatory hearing. Regardless, by September of 2018, the circuit court entered an order related to a recently held dispositional hearing and granted petitioner's motion to adjourn that hearing "due to inadequate notification of termination of parental rights." In October of 2018, the circuit court again entered an order adjourning the dispositional hearing and granting petitioner a "post-adjudicatory improvement period in lieu of a disposition." The circuit court further found that "a more intensive review of this matter is needed" and that a multidisciplinary team ("MDT") meeting "be held every fifteen . . . days." The circuit court further ordered petitioner to submit to random drug screens, comply with all requests from the MDT, and exercise supervised visitation at the DHHR and guardian's discretion.

Later that month, the guardian filed a motion to revoke petitioner's improvement period and proceed to disposition. In the motion, the guardian recounted several MDT meetings beginning in June of 2018, during which petitioner was offered various assistance and services in an attempt to remedy the underlying conditions of abuse and neglect. Despite these efforts, petitioner admitted at an MDT meeting in July of 2018 that he was a "mental wreck" and had not accomplished any of the recommended actions to "get . . . on track" in regard to his improvement. At that meeting, the MDT reiterated its suggestion that petitioner take steps to correct the issues, including submitting to counseling, obtaining employment, verifying his intention to obtain a contractor's license, and participating in parenting services. The guardian also outlined petitioner's failures to attend MDT meetings and provide requested information in support of his improvement period. Additionally, the guardian asserted that petitioner missed two appointments for a psychological evaluation, as recommended by the MDT, despite having them scheduled for days petitioner was not working. A DHHR worker also informed the guardian that she had not had contact with petitioner since before October 10, 2018, his phone number had been disconnected, and he failed

to provide the DHHR updated contact information. Due to difficulty contacting petitioner, the DHHR could not begin his parenting services. Because of petitioner's failure to comply with the requirements of his improvement period or the terms and conditions of his case plan, the guardian asked that his improvement period be revoked and the circuit court proceed to termination of his parental rights.

Thereafter, the circuit court held a hearing to address the guardian's motion and proceed to disposition. Petitioner was not present, but was represented by counsel. In fact, the circuit court specifically found that petitioner "had knowledge of this hearing and made a clear choice not to attend it." In reaching its ultimate determination, the circuit court "adopt[ed] as findings of fact the contents" of the guardian's motion. The circuit court further found that petitioner "violated the terms of the post-adjudicatory improvement period . . . by failing to maintain contact with the [DHHR] and failing to fully participate in all services" as required by the DHHR and the MDT. In making efforts to assist petitioner with his improvement, the circuit court found that the DHHR "attempt[ed] to contact him by telephone at least three times per week since the [prior] hearing until he disconnected his number in mid-October 2018; and . . . attempt[ed] to contact him by telephone at least twice daily since receiving his new telephone number on October 26, 2018." As such, the circuit court found that petitioner's failure to remain in contact with the DHHR "impeded its ability to provide him assistance." Further, in regard to the circuit court's prior direction that MDT meetings be held every fifteen days, the court found that "[t]hese meetings could not be coordinated due to [petitioner's] failure to remain in contact with the [DHHR]." The circuit court also found that petitioner was "$8,279.05 in arrears" on his child support as of the dispositional hearing. As such, the circuit court revoked petitioner's improvement period and terminated his parental rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

---

[2]The child's parents' rights have either been voluntarily relinquished or involuntarily terminated. According to the guardian, the child's permanency plan at this time is ongoing treatment in a residential setting due to behavioral issues that preclude placing him in foster care.

First, petitioner argues that the circuit court erred in terminating his rights because it previously ordered the MDT to meet every fifteen days and no MDT meetings were held in the forty-two days after that ruling.[3] We find, however, that the failure to hold the MDT meetings in question was a direct consequence of petitioner's failure to remain in contact with the DHHR or otherwise participate in the scheduling of such meetings. Indeed, the circuit court found in its final order that petitioner failed to remain in contact with the DHHR subsequent to its prior order directing that MDT meetings be held every fifteen days. During that period, the DHHR attempted to contact petitioner by phone multiple times each day, but his phone was disconnected during a significant portion of that period, and, when his phone was connected, he refused to answer or return the DHHR's calls. Based upon petitioner's failure to remain in contact with the DHHR, the circuit court found that the MDT "meetings could not be coordinated" as directed. We agree with the circuit court's finding that it was petitioner's willful refusal to contact the DHHR that resulted in the failure to hold a single MDT meeting subsequent to the circuit court's direction that they be held with increased frequency. As a result, petitioner is entitled to no relief on appeal in this regard.

Next, petitioner argues that the circuit court erred in holding a hearing to address both the guardian's motion to revoke his improvement period and disposition. In support, petitioner cites to Rule 32(a) of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings, which provides, in relevant part, that "[t]he disposition hearing shall commence . . . *no later than*

---

[3]In support of this assignment of error, petitioner raises issue with the DHHR's scheduling of, and his failure to submit to, a psychological evaluation. Petitioner asserts that he "requested that the [DHHR] caseworker . . . quickly schedule a psychological evaluation for [p]etitioner, . . . but such caseworker actually was able to schedule such evaluation within a week of the notice she directly provided to [p]etitioner, which was actually too fast given [p]etitioner's work schedule." We find, however, that the arguments petitioner raises in regard to this evaluation do not entitle him to relief. First, the record does not support petitioner's assertion that the scheduling of the evaluation conflicted with his work schedule. On the contrary, the record shows that the DHHR twice scheduled the evaluation on petitioner's "reported day off from work." As such, any argument that petitioner could not comply with the repeatedly rescheduled evaluation due to work obligations has no basis in the record. Further, petitioner asserts that by including his failure to attend the psychological evaluation as a basis for the motion to revoke his improvement period and proceed to disposition, the guardian "unilaterally imposed [this requirement] without discussing such new conditions during the ordered MDT meeting with [p]etitioner's counsel present." In short, petitioner argues that the requirement that he submit to a psychological evaluation should have been imposed during one of the MDT hearings that the circuit court directed be held every fifteen days. This argument, however, also lacks a basis in the record. Petitioner simply fails to acknowledge that the MDT recommended petitioner "seek[] mental health counseling" as early as an MDT meeting held in June of 2018. For petitioner to argue that submission to a psychological evaluation constitutes a unilateral condition imposed on him in contravention to due process considerations is untenable, especially when considering that petitioner admits that he "requested that the [DHHR] quickly schedule a psychological evaluation" for him on October 8, 2018.

thirty (30) days after the end of the improvement period."[4] (Emphasis added). We find, however, that nothing in Rule 32(a) precluded the circuit court from addressing both the guardian's motion to revoke petitioner's improvement period and disposition at the same hearing. In addressing both issues, the circuit court complied with the requirement that disposition be held no later than thirty days after the end of the improvement period. Additionally, petitioner argues that proceeding to disposition was inappropriate because no case plan was filed after he was granted an improvement period. Petitioner relies on West Virginia Code § 49-4-408, which provides that "[t]he case plan must be filed within sixty days of the child coming into foster care or within thirty days of the inception of the improvement period, *whichever occurs first*." Petitioner admits that "a case plan . . . was provided prior to the granting of an improvement period," but argues that he was entitled to a second case plan after the granting of his improvement period. We disagree, and find that the filing of a second case plan was not warranted under the plain language of the statute upon which petitioner relies.

Next, petitioner argues that he was prejudiced by a lack of notice of the dispositional hearing. We disagree. Simply put, petitioner was on notice that the circuit court would proceed to disposition since this Court granted him partial relief in the form of appointed counsel and the holding of a new dispositional hearing in March of 2018. Further, the circuit court in this matter held a series of dispositional hearings upon remand and stated during one such hearing in September of 2018 that it "could terminate [petitioner's] parental rights now," before instead deciding that it would provide petitioner with his "last chance" in the form of an improvement period. The circuit court also continued at least one of the dispositional hearings in order for petitioner to receive proper notice of the possible termination of his parental rights. Most importantly, however, is that the guardian's motion plainly sought the revocation of petitioner's improvement period so that disposition could take place, at which hearing the guardian would "recommend the [c]ourt terminate [petitioner's] parental rights." At the dispositional hearing, the circuit court found that petitioner "had knowledge of this hearing and made a clear choice not to attend." As such, any argument that petitioner lacked actual notice of the circuit court's intention to proceed with the termination of petitioner's parental rights is disingenuous and entitles petitioner to no relief.

Finally, petitioner argues that failure to comply with Rule 30 of the Rules of Procedure for Child Abuse and Neglect Proceedings left him unable to "properly prepare for, contest, and cross-examine witness during a contested dispositional hearing." Rule 30 requires that

> [a]t least five . . . judicial days prior to the disposition hearing, each party shall provide the other parties, persons entitled to notice and the right to be heard, and

---

[4]Petitioner devotes a significant portion of his argument in support of this assignment of error to an analysis of subsection (b) of that rule. However, we note that Rule 32(b) permits a circuit court to hold "[t]he disposition hearing immediately . . . follow[ing] the adjudication hearing if" certain conditions are met. For purposes of petitioner's appeal, it is unnecessary to discuss those conditions because it is undisputed that the circuit court did not hold the dispositional hearing immediately following the adjudicatory hearing. Because this rule governs a situation not present in this case, petitioner's reliance thereon is misplaced and entitles him to no relief.

the court a list of possible witnesses, with a brief summary of the testimony to be presented at the disposition hearing, and a list of issues of law and fact.

What petitioner ignores is that the DHHR filed a list of witnesses it subpoenaed as early as September 29, 2018, during which time it never changed its stated position that petitioner's parental rights should be terminated. This was clearly more than five days prior to the final dispositional hearing. Further, the guardian's detailed motion provided petitioner with an even more thorough analysis of the "issues of law and fact" that would support not only the revocation of his improvement period, but also the termination of his parental rights. As such, we find that petitioner is entitled to no relief.[5]

For the foregoing reasons, we find no error in the decision of the circuit court, and its November 14, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  January 17, 2020

**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison

---

[5]Petitioner does not substantively challenge the circuit court's termination of his parental rights, instead relying only on the procedural challenges as set forth above. As such, it is unnecessary to analyze the circuit court's basis for the termination of petitioner's parental rights, and the circuit court's termination is hereby affirmed.